

SEALED



FILED

APR 2 8 2021

RORY L. PERRY II, CLERK
U.S. District Court
Southern District of West Virginia

## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON GRAND JURY 2020
## APRIL 27, 2021 SESSION

**UNITED STATES OF AMERICA**

**v.**                                          CRIMINAL NO. _3:21-CR-00068_

**KENNETH EMENI**                            18 U.S.C § 1341
**KENNETH OGUDU**                            18 U.S.C. § 1343
    **also known as KENNETH LEE**        18 U.S.C. § 1956(h)
**OLUWAGBENGA HARRISON**                     18 U.S.C. § 1957
**JOHN NASSY**                               31 U.S.C. § 5324
**ROMELLO THORPE**                           18 U.S.C. § 2315
**OLUWABANISHE AWOLESI**
    **also known as OLUWABAMISE JOHNSON**

# I N D I C T M E N T

The Grand Jury charges:

### Introduction

At all times relevant to the Indictment:

### Terms

    1.    "Online schemes" targeted persons looking for romantic partners, friendship, and other close personal and business relationships on dating websites and other social media platforms. The perpetrators of the schemes created profiles using fictitious and fake names, locations, images, and personas, allowing the perpetrators of the schemes to cultivate relationships with prospective victims. The victims provided money and gifts to the perpetrators of the schemes and were typically asked to conduct transactions on behalf of the perpetrators of the scheme.

    2.    "Cryptocurrency" was a form of non-fiat based digital currency, in which transactions are verified and records maintained by a decentralized system using computer data and codes, rather than by a centralized authority. Bitcoin was a type of cryptocurrency.

3.     The term "shell company" refers to a purported business entity incorporated under state law that does not engage in any substantial legitimate business activity, but was instead used to perpetrate bank fraud, wire fraud, money laundering or other criminal offenses.

4.     Branch Banking & Trust ("BB&T") now known as "Truist," JP Morgan Chase, N.A. ("Chase"), TD AmeriTrade, Fifth Third Bank, Huntington National Bank, Bank of America, PNC Bank, SunTrust Bank ("SunTrust") also now known as "Truist," and City National Bank were financial institutions of the Federal Deposit Insurance Act, within the meaning of 18 U.S.C. § 20.

5.     BB&T, Chase, TD AmeriTrade, Fifth Third Bank, Huntington National Bank, Bank of America, PNC Bank, SunTrust, and City National Bank were financial institutions which engaged in, and the activities of which affected, interstate commerce as defined in 31 U.S.C. § 5312(a)(2).

6.     "Zelle" was a digital payment network and part of a private financial services company owned by Bank of America, BB&T, Capital One, Chase, PNC Bank, U.S. Bank and Wells Fargo. Zelle allowed an individual to electronically transfer money from his or her bank account to another registered user's bank account, held within the United States, by using a mobile device or the website of a participating banking institution.

<u>The Scheme to Defraud</u>

7.     In early 2016 through at least October 8, 2020, at or near Huntington, Cabell County, West Virginia, within the Southern District of West Virginia, and elsewhere, defendants KENNETH EMENI, JOHN NASSY, KENNETH OGUDU, also known as KENNETH LEE, OLUWAGBENGA HARRISON, ROMELLO THORPE and OLUWABISHE AWOLESI, also

2

known as OLUWABAMISE JOHNSON knowingly participated in a scheme to commit mail and wire fraud offenses, in violation of 18 U.S.C. §§ 1341 and 1343, respectively.

8.     The purpose of the scheme was for defendants KENNETH EMENI, JOHN NASSY, KENNETH OGUDU, also known as KENNETH LEE, OLUWAGBENGA HARRISON, ROMELLO THORPE and OLUWABISHE AWOLESI, also known as OLUWABAMISE JOHNSON, to enrich themselves by falsely cultivating relationships through online scams with the victims and thereby causing the victims to send money to persons working with the defendants and to accounts controlled by defendants.

<u>Manner and Means</u>

9.     It was part of the scheme to defraud that defendants KENNETH EMENI, JOHN NASSY, KENNETH OGUDU, also known as KENNETH LEE, OLUWAGBENGA HARRISON, ROMELLO THORPE, and OLUWABISHE AWOLESI, also known as OLUWAMBISE JOHNSON and others both known and unknown to the Grand Jury, would and did:

    a. Target and contact victims via email, text messaging, or online dating websites and social media websites that fraudulently induced the victims into believing the victim was in a romantic relationship, friendship, or business relationship with a person using a false and fraudulent identity created by defendants and other members of the scheme;

    b. Refuse to use FaceTime or any other video-chat technology with the victims in order to conceal their true identities;

    c. Induce the victims to send money for a variety of false and fraudulent reasons to persons using fraudulent identities, when, in actuality, the accounts were controlled by defendants;

    d. Direct victims to send payments via wire transfer services, including but not limited to bank wire, Western Union, and MoneyGram, to themselves or other

3

individuals.   At times, victims were directed to send payments to shell companies and accounts under defendants' control;

e.  Direct victims to purchase cashier's checks and money orders which they then directed to identified parties and addresses using the United States Postal Service and other common couriers; and

f.  Share the proceeds among themselves and with others through wire transfers, Zelle, and by cashing money orders and cashier's checks.

10.    Specifically, defendants KENNETH EMENI, JOHN NASSY, KENNETH OGUDU, also known as KENNETH LEE, OLUWAGBENGA HARRISON, ROMELLO THORPE, OLUWABISHE AWOLESI, also known as OLUWABISHE JOHNSON and others both known and unknown to the Grand Jury, carried out the scheme to defraud in the following manner:

**Daniel Moore and Victim J.H.**

11.    In 2016, defendants KENNETH EMENI, OLUWAGBENGA HARRISON, KENNETH OGUDU, also known as KENNETH LEE,  and ROMELLO THORPE, together with persons known or unknown to the Grand Jury, through an individual purporting to be Daniel Moore (hereinafter reference to "Daniel" shall mean the false persona created to further the fraud scheme) contacted Victim J.H. through a dating website. Victim J.H. lived in Michigan.

12.    As part of the scheme to defraud, Daniel and Victim J.H. communicated frequently, mostly communicating through phone calls, text messaging and emails.

13.    In furtherance of the scheme, Victim J.H. began a virtual romance with Daniel. Victim J.H. had been virtually dating Daniel for a short amount of time when Daniel fraudulently induced Victim J.H. to send him money for a variety of false and fabricated reasons.

14.     As part of the scheme to defraud, Daniel falsely and fraudulently told Victim J.H. that he was originally from Michigan and would be returning home soon. Daniel further misrepresented that he was a civil engineer working on an oil rig in Dubai.

15.     In furtherance of the scheme to defraud, approximately one month after meeting Victim J.H. online, Daniel falsely told Victim J.H. that he needed money to pay his workers and started to induce her to send him money.

16.     In furtherance of the scheme to defraud, on or about August 19, 2017, Daniel fraudulently induced Victim J.H. to send $900 through Western Union to defendant KENNETH EMENI, who Victim J.H. had never met or communicated with, for the alleged purpose of paying Daniel's workers.

17.     In furtherance of the scheme to defraud, on or about December 14, 2017, Daniel fraudulently induced Victim J.H. to send $725 through MoneyGram to defendant OLUWAGBENGA HARRISON, who Victim J.H. had never met or communicated with, for the alleged purpose of paying Daniel's workers.

18.     As part of the scheme to defraud, a person using the fictitious name "Ieasha" contacted Victim J.H. and falsely and fraudulently told her that Daniel had died and that his employer owed Daniel approximately $3,000,000. Iesha also stated that Daniel listed Victim J.H. as his beneficiary. Ieasha then falsely and fraudulently told Victim J.H. that she would help Victim J.H. collect the money from Daniel's estate; however, Victim J.H. had to pay the Dubai government taxes before she could receive the funds.

19.     In furtherance of the scheme to defraud, on or about January 18, 2018, Ieasha fraudulently induced Victim J.H. to wire $34,500 to defendant KENNETH EMENI for tax payments on the fabricated inheritance.

20.     In furtherance of the scheme to defraud, on or about September 13, 2019, Ieasha fraudulently induced Victim J.H. to wire $35,000 to defendant ROMELLO THORPE.  Ieasha instructed Victim J.H. to tell the bank that the transfer was for a quilting machine.

21.     As part of the scheme to defraud, after receiving the $35,000 payment, Defendant ROMELLO THORPE made three electronic payments to defendant KENNETH OGUDU also known as KENNETH LEE.  On September 19, 2019, defendant ROMELLO THORPE sent $2,000 via Zelle and $5,000 via wire transfer to defendant KENNETH OGUDU, also known as KENNETH LEE.  On September 20, 2019, defendant ROMELLO THORPE made another wire transfer of $7,000 to defendant KENNETH OGUDU, also known as KENNETH LEE.

### Robben Jack and Victim B.C.

22.     In late 2017 or early 2018, defendant KENNETH EMENI, together with persons known or unknown to the Grand Jury, through an individual purporting to be Robben Jack (hereinafter reference to "Robben" shall mean the false persona created to further the fraud scheme) contacted Victim B.C. online.  Victim B.C. lived in Pennsylvania.  Robben falsely and fraudulently told Victim B.C. that he was from Nigeria and was currently working as an engineer on an oil rig located off the coast of the United Kingdom.

23.     As part of the scheme to defraud, Robben and Victim B.C. communicated via text or email almost every day and sometimes communicated multiple times a day.  Victim B.C. began to view Robben as a romantic interest and believed herself to be in love with him.

24.     In furtherance of the scheme to defraud, Robben falsely and fraudulently told Victim B.C. that he was coming to the United States on vacation and that they would get married. Robben further misrepresented that his company required him to find and pay for his replacement during the time that he was on vacation.

25.     In furtherance of the scheme to defraud, Robben told Victim B.C. he could not pay his replacement because he could not access his bank accounts.  On or about February 28, 2018, Robben fraudulently induced Victim B.C. to wire $5,750 from her Pennsylvania bank account to defendant KENNETH EMENI's bank account held in Huntington, West Virginia, allegedly to pay for Robben's replacement at work.

26.     In furtherance of the scheme to defraud, Victim B.C. wired defendant KENNETH EMENI the $5,750, purportedly for the benefit of Robben, even though she had never met or previously communicated with defendant KENNETH EMENI.

### David Gedrile and Victim R.L.

27.     In February 2018, defendants KENNETH EMENI, JOHN NASSY and OLUWABANISHE AWOLESI, also known as OLUWABANISHE JOHNSON together with persons known or unknown to the Grand Jury, through an individual purporting to be David Gedrile (hereinafter reference to "David" shall mean the false persona created to further the fraud scheme) contacted Victim R.L. online.  Victim R.L. lived in New Hampshire.  David falsely and fraudulently told Victim R.L. that he worked on an oil rig in the Caribbean.

28.     As part of the scheme to defraud, David and Victim R.L. communicated almost every day and sometimes multiple times a day. David and Victim R.L. communicated mostly through Facebook Messenger and Google Hangouts.

7

29.     Victim R.L. began a virtual romance with David.

30.     In furtherance of the scheme to defraud, in December of 2018, David informed Victim R.L. that he needed money because he could not access his United Kingdom bank accounts while he was working on the oil rig in the Caribbean.

31.     In furtherance of the scheme to defraud, on or about April 2, 2018, David fraudulently induced Victim R.L. to send him $1,500, claiming that he needed the funds for mandatory permission to travel to the Caribbean because he did not have access to his accounts in the United Kingdom.  David directed her to send $1,500 via Wal-Mart to defendant KENNETH EMENI, who Victim R.L. did not know.

32.     In furtherance of the scheme to defraud, on or about April 14, 2018, David fraudulently induced Victim R.L. to send $5,100 via MoneyGram to defendant KENNETH EMENI at an address in Huntington, West Virginia.  Victim R.L. sent the funds at the direction of David, even though she had never met or previously communicated with defendant KENNETH EMENI.

33.     In furtherance of the scheme to defraud, on or about April 24, 2018, David asked Victim R.L. for another $1,500, again for the stated purpose of roundtrip travel to the Caribbean. David directed Victim R.L. to send the funds through Wal-Mart to defendant KENNETH EMENI.

34.     In furtherance of the scheme to defraud, on or about April 26, 2018, David fraudulently induced Victim R.L. to send him $1,500 for the stated purpose of roundtrip travel to the Caribbean. David again directed Victim R.L. to send the funds to defendant KENNETH EMENI via Wal-Mart.

35.     In furtherance of the scheme to defraud, on or about June 29, 2018, David fraudulently induced Victim R.L. to wire $20,000 to defendant JOHN NASSY's Chase bank account held in Huntington, West Virginia. David instructed Victim R.L. to wire the funds because he needed emergency funds to pay for a lawyer and legal expenses to retrieve his funds from a United Kingdom bank. David told Victim R.L. that the $20,000 was half of the legal fees.

36.     In furtherance of the scheme to defraud, on or about July 3, 2018, David fraudulently induced Victim R.L. to wire another $20,000 to defendant JOHN NASSY's Chase bank account held in Huntington, West Virginia.

37.     As part of the scheme, on or about July 10, 2018, David fraudulently induced Victim R.L. to wire $5,000 to defendant JOHN NASSY's Chase bank account held in Huntington, West Virginia.

38.     In furtherance of the scheme to defraud, on or about August 3, 2018, David fraudulently induced Victim R.L. to wire $10,000 to defendant JOHN NASSY. David directed Victim R.L. to wire the $10,000 for the purpose of paying for someone to transport his funds to the United States from the United Kingdom.

39.     In furtherance of the scheme to defraud, on or about September 6, 2018, David fraudulently induced Victim R.L. to wire $30,000 to Defendant AWOLSEI. David first instructed Victim R.L. to send this wire transfer to defendant JOHN NASSY or defendant KENNETH EMENI. When these attempted wire transfers would not go through to defendant JOHN NASSY or defendant KENNETH EMENI, David then instructed her to send the wire transfer to defendant OLUWABANISHE AWOLESI, whom she did not know and had not communicated with before.

9

David told Victim R.L. that the purpose of this wire transfer was to pay additional customs fees pertaining to the funds transfer from the United Kingdom to the United States.

40.     In furtherance of the scheme to defraud, on or about September 10, 2018, David fraudulently induced Victim R.L. to wire $30,000 to defendant OLUWABANISHE AWOLESI also known as OLUWABANISHE JOHNSON's Chase bank account held in Huntington, West Virginia.

41.     In furtherance of the scheme to defraud, on or about September 17, 2018, David fraudulently induced Victim R.L. to wire an additional $30,000 to defendant OLUWABANISHE AWOLESI, also known as defendant OLUWABNISHE JOHNSON.

**Maurice Idress and Victim R.C.**

42.     In 2017, defendant KENNETH EMENI, together with persons known or unknown to the Grand Jury, through an individual purporting to be Maurice Idress (hereinafter reference to "Maurice" shall mean the false persona created to further the fraud scheme) contacted Victim R.C. through an online dating website. Victim R.C. resided in Illinois. Maurice falsely and fraudulently told Victim R.C. that he lived and worked in New York.

43.     Maurice and Victim R.C. communicated via telephone almost every day and sometimes communicated multiple times a day. After communicating for a period of time, Victim R.C. began to view Maurice as a romantic interest and believed herself to be in love with him.

44.     As part of the scheme to defraud, Maurice falsely and fraudulently told Victim R.C. that he needed money to pay his employees.

45.     In furtherance of the scheme to defraud, Maurice fraudulently induced Victim R.C. to send money to defendant KENNETH EMENI through Wal-Mart or MoneyGram, who Maurice claimed would forward the money to him.

46.     In furtherance of the scheme to defraud, on or about November 3, 2017, Victim R.C. sent $750 through MoneyGram to defendant KENNETH EMENI, for the benefit of Maurice, even though she never met or communicated with defendant KENNETH EMENI.

47.     In furtherance of the scheme to defraud, on or about November 4, 2017, Victim R.C. sent $750 through Wal-Mart to defendant KENNETH EMENI.  This was done at Maurice's request and for his benefit.

48.     In furtherance of the scheme to defraud, on or about November 8, 2017, Victim R.C. sent $500 through MoneyGram to defendant KENNETH EMENI.  This was done at Maurice's request and for his benefit.

49.     In furtherance of the scheme to defraud, on or about November 9, 2017, Victim R.C. sent $500 through Western Union to defendant KENNETH EMENI.  This was done at Maurice's request and his benefit.

50.     As part of the scheme, on or about May 1, 2018, Maurice fraudulently induced Victim R.C. to wire $5,000 from her Kentucky credit union account to defendant KENNETH EMENI's bank account held in Huntington, West Virginia.

### Richard Boucher and Victim G.C.

51.     In early 2017, defendant KENNETH EMENI, together with persons known or unknown to the Grand Jury, through an individual purporting to be Richard Boucher (hereinafter "Richard" shall mean the false persona created to further the fraud scheme) contacted Victim G.C.

11

through an online dating website. Victim G.C. lived in Florida. Richard falsely and fraudulently told Victim G.C. that he was building a skyscraper in London but traveled to China for various reasons.

52.     In furtherance of the scheme to defraud, Richard and Victim G.C. communicated mostly through text and email. Victim G.C. began to develop feelings for Richard and viewed him as a romantic interest.

53.     In furtherance of the scheme to defraud, Richard falsely and fraudulently told Victim G.C. that one of his machines needed for the London skyscraper project broke, and he needed money to repair it. Richard also falsely and fraudulently told Victim G.C. that he discovered a rare gem while digging in London that he needed to take to China to be cleaned. Richard further misrepresented that he needed money to pay taxes to transport the gem out of England. Richard also told Victim G.C. that he needed money for child support and his son's other needs.

54.     As part of the scheme, Richard introduced Victim G.C. to another individual named Shelia Oolayou ("Shelia") who held herself out to be one of Richard's ex-girlfriends and the mother of his child. As part of the scheme, Shelia sent Victim G.C. lulling communications, including pictures of a child that she claimed she shared with Richard, to lend credibility to Richard's stories.

55.     In furtherance of the scheme to defraud, Richard fraudulently induced Victim G.C. to wire money to accounts located in New York, Atlanta, and other locations. On or about May 21, 2018, Richard also fraudulently induced Victim G.C. to wire $3,000 from her Florida account to defendant KENNETH EMENI's bank account held in Huntington, West Virginia.

**Gregory Hulson and Victim S.H.**

56.      In 2017, defendant OLUWAGBENGA HARRISON, together with persons known or unknown to the Grand Jury, through an individual purporting to be Gregory Hulson (hereinafter reference to "Gregory" shall mean the false persona created to further the fraud scheme) contacted Victim S.H. online.  Victim S.H. lived in Kentucky.  Gregory falsely and fraudulently told Victim S.H. that he was originally from Canada and was currently working on an oil rig located outside of the United States.

57.      In furtherance of the scheme to defraud, Gregory and Victim S.H. communicated mostly through text messages and the online application Google Hangouts.  Victim S.H. began to develop feelings for Richard and they began a virtual romance.  Victim S.H. had been virtually dating Gregory for a few months when he fraudulently induced her to send him money for a variety of false and fabricated reasons.

58.      In furtherance of the scheme to defraud, after they had been communicating for approximately six or seven months, Gregory misrepresented to Victim S.H. that he needed money to purchase supplies for his oil rig.  Gregory falsely told Victim S.H. that he was unable to access his bank accounts from the oil rig.

59.      In furtherance of the scheme to defraud, Gregory falsely and fraudulently told Victim S.H. that he was coming to the United States and that they would get married.

60.      In furtherance of the scheme to defraud, on or about July 17, 2018, Gregory fraudulently induced Victim S.H. to wire $12,000 from her Tennessee bank account to defendant OLUWAGBENGA HARRISON's bank account held in Huntington, West Virginia to pay for the oil rig supplies.  Gregory falsely told Victim S. H. that defendant OLUWAGBENGA HARRISON would forward the $12,000 to him.

13

**George Mason and Victim R.B.**

61.      In or around December 2018, defendants KENNETH EMENI and KENNETH OGUDU, also known as KENNETH LEE, together with persons known or unknown to the Grand Jury, through an individual purporting to be George Mason (hereinafter reference to "George" shall mean the false persona created to further the fraud scheme) contacted Victim R.B. online through Instagram.  Victim R.B. lived in Louisiana.  George told Victim R.B. that he worked on an Exxon Mobile oil rig in the Gulf of Mexico.

62.      As part of the scheme to defraud, George and Victim R.B. communicated almost every day and sometimes multiple times a day.  David and Victim R.B. communicated mostly through texts and encrypted messaging applications, such as WhatsApp.

63.      As part of the scheme to defraud, Victim R.B. developed an emotional attachment to George.  Victim R.B. began virtually dating George.  The pair had been dating for a short amount of time before George fraudulently induced Victim R.B. to send him money for a variety of false and fabricated reasons.

64.      In furtherance of the scheme to defraud, around December 2018, approximately two weeks after meeting virtually, George told Victim R.B. that his oil rig crew was running out of food and asked Victim R.B. to send money to pay for the crew's food.

65.      In furtherance of the scheme to defraud, on or about August 28, 2019, George called Victim R.B. and falsely and fraudulently told her that he was on his way to Louisiana to see her but that he had been kidnapped in New Orleans.  George then induced Victim R.B. to wire $9,000 to defendant KENNETH OGUDU, also known as KENNETH LEE, for ransom money, even though Victim R.B. had never met or communicated with defendant KENNETH OGUDU, also

known as KENNETH OGUDU. George instructed Victim R.B. to write "personal loan" as the purpose for the wire transfer, even though that was not the true purpose of the wire.

66.     In furtherance of the scheme to defraud, on or about August 30, 2019, George falsely and fraudulently told Victim R.B. that his kidnappers demanded another $3,000 for his release. George then induced Victim R.B. to wire $3,000 to defendant KENNETH OGUDU. George instructed Victim R.B. to write "personal loan" as the purpose of the wire transfer, even though this transfer was also not for a personal loan.

67.     In furtherance of the scheme to defraud, on or about September 9, 2019, George called Victim R.B. and falsely and fraudulently told her that the kidnappers needed another $10,000 for his ransom. George then induced Victim R.B. wire $10,000 to defendant KENNETH EMENI for his ransom money, even though Victim R.B. had never met or communicated with defendant KENNETH EMENI. George instructed Victim R.B. to write "personal loan" as the purpose for the wire transfer, even though that was not the true purpose of the wire.

68.     In furtherance of the scheme to defraud, on or about February 21, 2020, George contacted Victim R.B. and falsely and fraudulently told her that he had been kidnapped by drug dealers again on his way to see her in Louisiana. George induced Victim R.B. to wire $12,000 to Augustine Amechi, an unindicted co-conspirator, for his ransom.

**"Chris Hemsworth" and Victim C.E.**

69.     Sometime prior to May 2018, defendant KENNETH EMENI, together with persons known or unknown to the Grand Jury, created and employed a false persona known as "Chris Hemsworth." "Chris Hemsworth" falsely and fraudulently pretended to be the actor Chris Hemsworth, when in fact, he was not. Hereinafter references to "Chris Hemsworth" or "Chris"

15

shall refer to the false persona created to further the fraud scheme. "Chris Hemsworth" contacted Victim C.E. online. Victim C.E. lived in Arizona.

70.     As part of the scheme to defraud, defendant KENNETH EMENI and others known and unknown to the Grand Jury, created and employed another false persona "Ieasha," (hereinafter, reference to "Ieasha" shall mean the false persona created to further the fraud scheme) who purported to be Chris Hemsworth's manager.

71.     In furtherance of the scheme to defraud, "Chris Hemsworth" and Ieasha communicated with Victim C.E. through text-message and Facebook to set up a meet and greet.

72.     In furtherance of the scheme to defraud, "Chris Hemsworth" and Ieasha falsely and fraudulently told Victim C.E. that it would cost a great deal of money to meet "Chris Hemsworth," but that the meet and greet fee could be paid through installment payments.

73.     As part of the scheme, "Chris Hemsworth" and Ieasha fraudulently directed Victim C.E. where to transfer the money for the installment payments, including how much money was due each transaction and the individual who was to receive the installment payment.

74.     In furtherance of the scheme to defraud, on or about May 31, 2018, "Chris Hemsworth" fraudulently induced Victim C.E. to wire $25,000 to defendant KENNETH EMENI, who he claimed was an acquaintance of his. Victim C.E. wired the $25,000 to defendant KENNETH EMENI even though she had never met or communicated with him.

75.     In furtherance of the scheme to defraud, on or about June 8, 2018, the person purporting to be "Chris Hemsworth" again fraudulently induced Victim C.E. to wire $25,000 to defendant KENNETH EMENI as part of the meet and greet fee.

76.     Victim C.E. continued to wire money to other individuals as "Chris Hemsworth" directed until around April 19, 2019.

**"Blake Shelton" and Victim J.R.**

77.     In or around the summer of 2018, Defendant OLUWAGBENGA HARRISON and others known and unknown to the Grand Jury, through an individual purporting to be Heather Harrison (hereinafter, reference to "Heather" shall mean the false persona created to further the fraud scheme) contacted Victim J.R. and claimed to work for Warner Brother's music as country music artist Blake Shelton's manager.  Victim J.R. resided in Alabama.

78.     As part of the scheme, on or around the summer of 2018, Heather told Victim J.R. that she was going to be entered in the contest to win the Blake Shelton Fan of the Year if she paid a fee of $2,500.  In September 2018, Heather told Victim J.R. that if she wired $2,500, she would become a member of the Blake Shelton Fan Club and be entered into the Blake Shelton Fan Club $1,000,000 contest.

79.     In furtherance of the scheme to defraud, Heather fraudulently induced Victim J.R. to send the wire transfer to defendant OLUWAGBENGA HARRISON.  Heather then provided Victim J.R. with defendant OLUWAGBENGA HARRISON's receiving bank account information.  On September 12, 2018, Victim J.R. wired HARRISON $2,500.

80.     In furtherance of the scheme to defraud, Heather told Victim J.R. if she sent another $5,000 wire transfer, she would be in the top 10 of the $1,000,000 Blake Shelton Fan Club Fan of the Year contest.  Heather again fraudulently induced Victim J.R. to wire $5,000 to defendant OLUWAGBENGA HARRISON's West Virginia bank account.  On October 9, 2018, Victim J.R. wired HARRISON the $5,000.

81.     In furtherance of the scheme to defraud, in and around October of 2018, Heather informed Victim J.R. if she sent a $10,000 wire transfer, she was going to be in the top three of the $1,000,000 Blake Shelton Fan Club Fan of the Year contest.  Heather again fraudulently induced Victim J.R. to transfer the $10,000 to defendant OLUWAGBENGA HARRISON.  On or about October 23, 2018, Victim J.R. wired $10,000 to HARRISON.

82.     In furtherance of the scheme to defraud, in or early 2020, Heather contacted Victim J.R. again and told her that she had won $250,000 in the Blake Shelton Fan of The Year contest. Heather informed Victim J.R. she needed to wire $12,000 to pay the taxes on her winnings.

### John Weisner and Victim L.D.

83.     Sometime prior to September of 2020, defendant JOHN NASSY, together with persons both known and unknown to the Grand Jury, through an individual purporting to be John Weisner (hereinafter reference to "John" shall mean the false persona created to further the fraud scheme) contacted Victim L.D. online.  Victim L.D. lived in the state of Washington.  John falsely and fraudulently told Victim L.D. that he was an engineer working on an oil rig in Canada.

84.     As part of the scheme, John repeatedly directed Victim L.D. to send money via MoneyGram, Western Union, wire transfers, and currency, as well as merchandise, including a Rolex watch and laptop computers.

85.     In furtherance of the scheme, John instructed Victim L.D. to send most of the money, laptop computers, and Rolex watches to several people in South Africa.

86.     In furtherance of the scheme, John induced Victim L.D. to send funds to him through defendant JOHN NASSY, who Victim L.D. had never met or communicated with, for the

purpose of paying his workers on the oil rig. John assured Victim L.D. that all the money she sent to defendant JOHN NASSY and the others in South Africa would be forwarded to him in Canada.

87.     In furtherance of the scheme, in or about September of 2020, John contacted Victim L.D. and claimed he wanted to make a monetary deposit in her Wells Fargo bank account. Victim L.D. provided John with her banking information.

88.     In furtherance of the scheme, in or about September of 2020, Victim L.D. received a deposit of approximately $5,000 in one of her Wells Fargo bank accounts.

89.     In furtherance of the scheme to defraud, after the $5,000 was deposited in Victim L.D.'s bank account, she was contacted by an individual stating that Victim L.D. needed to contact him and he would instruct her how to set up a coin source Bitcoin account in which to deposit the $5,000.

90.     After Victim L.D. received the $5,000, she spoke with John again and informed him that her Wells Fargo bank account had been frozen after the receipt of the $5,000 deposit.

91.     As part of the scheme to defraud, on or around October 8, 2020, Victim L.D. received approximately $149,100 in her bank account. The deposit was from the Small Business Administration (SBA) and designated for Dunn-Edward Paints, not Victim L.D. or "John Weisner." This deposit was originated from COVID-19 relief monies and was supposed to benefit Dunn-Edward Paints, not Victim L.D. or "John Wiesner." John attempted use Victim L.D. as a money mule, meaning that the fraud proceeds would be housed in her bank account and then she could transfer the fraud funds to him at a later time.

92.     In furtherance of the scheme, John texted Victim L.D. and advised her that he would send her the name of the person that she was to send the $149,900. Prior to sending the $149,000

as directed by John, law enforcement seized the $149,900 from Victim L.D.'s bank account instead.

### Mark Williams, Inayee Smith, Colin Bradson and Victim J.W.

93.     In June of 2018, defendants KENNETH EMENI, JOHN NASSY, OLUWAGBENGA HARRISON and others known and unknown to the Grand Jury, through individuals purporting to be Mark Williams (hereinafter reference to "Mark" shall mean the false persona created to further the fraud scheme), Inayee Smith (hereinafter reference to "Inayee" shall mean the false persona created to further the fraud scheme) and Colin Bradson (hereinafter reference to "Colin" shall mean the false persona created to further the fraud scheme) contacted Victim J.W online.  Victim J.W. lived in New Zealand.  Mark falsely and fraudulently told Victim J.W. that he was in the United States visiting his daughter.

94.     As part of the scheme, Victim J.W. and Mark communicated mostly through Facebook and WhatsApp and developed a friendship.

95.     In furtherance of the scheme to defraud, Mark informed Victim J.W. that he made money through Bitcoin trading.  Mark virtually introduced Victim J.W. to Inayee and claimed that Inayee could help Victim J.W. profit from Bitcoin investments as well.

96.     In furtherance of the scheme to defraud, around November or December of 2018, Victim J.W. was induced to purchase approximately $96,000 in Bitcoin.

97.     In furtherance of the scheme to defraud, Mark helped Victim J.W. set up a Bitcoin wallet.  Inayee then emailed Victim J.W. instructions on how to obtain the Bitcoin through www.LocalBitcoins.com.  Victim J.W. purchased the Bitcoin and put them in her Bitcoin wallet.

Victim J.W. then transferred the Bitcoin to Inayee's Bitcoin wallet for Victim J.W.'s investments. Victim J.W. never received any return on her investments.

98.    In furtherance of the scheme to defraud, on or about January 1, 2019, Colin contacted Victim J.W. online.  After Victim J.W. confided in Colin about her failed Bitcoin investment, Colin told Victim J.W. that she had been scammed but that he knew people who could help her get her money back.

99.    In furtherance of the scheme to defraud, Colin falsely told Victim J.W. that defendants KENNETH EMENI, JOHN NASSY, and OLUWAGBENGA HARRISON were individuals who would help her get her money back from the fake Bitcoin investments.

100.    In furtherance of the scheme to defraud, Colin provided Victim J.W. with the bank routing number, bank accounts, names on the accounts, addresses on the account, the amounts to send and the receiving SWIFT codes for defendants KENNETH EMENI, JOHN NASSY, OLUWAGBENGA HARRISON, and others known and unknown to the Grand Jury.

101.    In furtherance of the scheme to defraud, Colin fraudulently induced Victim J.W. to send multiple wire transfers to defendants KENNETH EMENI, JOHN NASSY, and OLUWAGBENGA HARRISON's bank accounts held in Huntington, Cabell County, West Virginia.

**Counts One Through Twenty-Eight**
**(Wire Fraud)**

102.    Paragraphs 1 through 101 are incorporated herein.

103.    On or about the following dates at or near Huntington, Cabell County, West Virginia, in the Southern District of West Virginia, and elsewhere, defendants KENNETH EMENI, JOHN NASSY, KENNETH OGUDU, also known as KENNETH LEE, OLUWAGBENGA HARRISON, ROMELLO THORPE, OLUWABISHE AWOLESI, also known as OLUWABISHE JOHNSON and others known and unknown to the Grand Jury, having devised and intending to devise, and participating in a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representation and promises, and for the purpose of executing such scheme and artifice, did knowingly transmit and cause to be transmitted by means of wire and radio communications in interstate commerce the writings, signs, signals, pictures, and sounds described below for each count, each transmission constituting a separate count:

| COUNT | DEFENDANT | DATE | INTERSATE TRANSMISSION | FROM | TO |
|---|---|---|---|---|---|
| 1 | KENNETH EMENI | 8/19/17 | Victim J.H. Western Union transfer of $900 | Michigan | Huntington, WV |
| 2 | OLUWAGBENGA HARRISION | 12/14/17 | Victim J.H. MoneyGram transfer of $725 | Michigan | Huntington, WV |
| 3 | KENNETH EMENI | 1/18/18 | Victim J.H. Money wire of $34,500 | Michigan | Huntington, WV |
| 4 | KENNETH EMENI | 2/28/18 | Victim B.C. Money wire of $5,750 | Pennsylvania | Huntington, WV |
| 5 | KENNETH EMENI | 4/14/18 | Victim R.L. MoneyGram transfer of $5,100 | New Hampshire | Huntington, WV |

| 6 | KENNETH EMENI | 04/26/18 | Victim R.L. Western Union transfer of $1,500 | New Hampshire | Huntington WV |
|---|---|---|---|---|---|
| 7 | KENNETH EMENI | 5/1/18 | Victim R.C. money wire of $5,000 | Illinois | Huntington, WV |
| 8 | KENNETH EMENI | 5/21/18 | Victim G.C. money wire of $3,000 | Florida | Huntington, WV |
| 9 | KENNETH EMENI | 5/31/18 | Victim C.E. money wire of $25,000 | Arizona | Huntington, WV |
| 10 | KENNETH EMENI | 6/8/18 | Victim C.E. money wire of $25,000 | Arizona | Huntington, WV |
| 11 | JOHN NASSY | 6/29/18 | Victim R.L. Money wire of $20,000 | New Hampshire | Huntington, WV |
| 12 | OLUWAGBENGA HARRISON | 7/17/18 | Victim S.H. money wire of $12,000 | Tennessee | Huntington, WV |
| 13 | JOHN NASSY | 8/3/18 | Victim R.L. money wire of $10,000 | New Hampshire | Huntington, WV |
| 14 | KENNETH OGUDU | 8/28/18 | Victim R.B. money wire of $9,000 | Louisiana | Huntington, WV |
| 15 | OLUWABANISHE AWOLESI | 9/6/18 | Victim R.L. money wire of $30,000 | New Hampshire | Huntington, WV |
| 16 | OLUWAGBENGA HARRISION | 9/12/18 | Victim J.R. money wire of $2,500 | Alabama | Huntington, WV |
| 17 | OLUWABANISHE AWOLESI | 9/17/18 | Victim R.L. money wire of $30,000 | New Hampshire | Huntington, WV |
| 18 | OLUWAGBENGA HARRISION | 10/23/18 | Victim J.R. money wire of $10,000 | Alabama | Huntington, WV |
| 19 | JOHN NASSY | 1/10/19 | Victim J.W. money wire of $5,000 | New Zealand | Huntington, WV |

| 20 | JOHN NASSY | 1/29/19 | Victim J.W. money wire of $6,000 | New Zealand | Huntington, WV |
| 21 | OLUWAGBENGA HARRISON | 2/13/19 | Victim J.W. money wire of $5,000 | New Zealand | Huntington, WV |
| 22 | KENNETH EMENI | 3/4/19 | Victim J.W. money wire of $5,000 | New Zealand | Huntington, WV |
| 23 | OLUWAGBENGA HARRISON | 3/18/19 | Victim J.W. money wire of $5,000 | New Zealand | Huntington, WV |
| 24 | JOHN NASSY | 4/29/19 | Victim J.W. money wire of $6,000 | New Zealand | Huntington, WV |
| 25 | KENNETH EMENI | 5/6/2019 | Victim J.W. money wire of $6,000 | New Zealand | Huntington, WV |
| 26 | KENNETH EMENI | 5/21/19 | Victim J.W. money wire of $6,000 | New Zealand | Huntington, WV |
| 27 | KENNETH EMENI | 9/9/19 | Victim R.B. money wire of $10,000 | Louisiana | Huntington, WV |
| 28 | ROMELLO THORPE, KENNETH OGUDU | 9/19/19 | Money wire of $2,000 from THORPE to OGUDU | Huntington, WV via New York | Huntington, WV |

All in violation of Title 18, United States Code, Section 1343.

## Counts Twenty-Nine and Thirty
### (Mail Fraud)

104.    Paragraphs 1 through 101 are incorporated herein.

105.    On or about the dates specified below for each count, at or near Huntington, Cabell County, West Virginia, in the Southern District of West Virginia, and elsewhere, having devised and intended to devise the above-described scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing the scheme, defendant JOHN NASSY knowingly caused to be placed in an authorized depository for mail, the mail matters listed below, made payable to defendant JOHN NASSY, and delivered by the United States Postal Service to his address in Huntington, West Virginia, each transmission constituting a separate count.

| COUNT | DATE | MAILING |
|-------|------|---------|
| 29 | 9/12/2018 | From the State of Washington, Victim L.D., mailed a cashier's check ending in number 5778 payable to defendant **JOHN NASSY** located in Huntington, Cabell County, West Virginia |
| 30 | 9/14/2018 | From the State of Washington, Victim L.D. mailed a cashier's check ending in 7181 to defendant **JOHN NASSY** located in Huntington, Cabell County, West Virginia |

All in violation of Title 18, United States Code, Section 1341.

## Count Thirty-One
### (Receipt of Stolen Money)

106.    Paragraphs 1 – 101 are incorporated by reference herein.

107.    From in or around 2017 until October 8, 2020, at or near Huntington, Cabell County, West Virginia, in the Southern District of West Virginia, and elsewhere, defendants KENNETH EMENI, JOHN NASSY, KENNETH OGUDU, also known as KENNETH LEE, OLUWAGBENGA HARRISON, ROMELLO THORPE, and OLUWABANISHE AWOLESI, also known as OLUWABANISHE JOHNSON, together with others known and unknown to the Grand Jury, each aiding and abetting the other, received, possessed, concealed, stored, bartered, sold, and disposed of goods, wares, merchandise, securities, and money, of the value of $5,000 and more, which had crossed a state boundary after being stolen, unlawfully converted, and taken, to wit, defendants KENNETH EMENI, JOHN NASSY, KENNETH OGUDU, also known as KENNETH LEE, OLUWAGBENGA HARRISON, ROMELLO THORPE, and OLUWABANISHE AWOLESI, also known as OLUWABANISHE JOHNSON, received proceeds of fraud schemes that they knew had been stolen and which were transferred from bank accounts and money transfer locations outside of the State of West Virginia to bank accounts in Huntington, Cabell County, West Virginia and elsewhere.

All in violation of Title 18, United States Code, Section 2315.

### Count Thirty-Two
### (Money Laundering Conspiracy)

108.    Paragraphs 1 – 101 are incorporated by reference herein.

109.    From in or around September 13, 2019 until approximately on or about September 20, 2019, at or near Huntington, Cabell County, West Virginia, in the Southern District of West Virginia, and elsewhere, defendants ROMELLO THORPE and KENNETH OGUDU, also known as KENNETH LEE,  together with others known and unknown to the Grand Jury, did knowingly and intentionally conspire to conduct financial transactions, affecting interstate and foreign commerce, knowing that the property involved in the financial transactions would represent the proceeds of some form of unlawful activities, namely proceeds of wire fraud, in violation of 18 U.S.C. § 1343, and bank fraud, in violation of 18 U.S.C. § 1344, and the transactions in fact would involve the proceeds of specified unlawful activities, knowing that such financial transactions were designed in whole and in part (i) to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activities, and (ii) to knowingly avoid a transaction reporting requirement, contrary to Title 18, United States Code, Section 1956(a)(1)(B)(i) and 1956(a)(1)(B)(ii).

All in violation of Title 18, United States Code, Section 1956(h).

## Count Thirty-Three
### (Unlawful Monetary Transaction)

110.    Paragraphs 1 – 101 are incorporated by reference herein.

111.    At all relevant times, Chase had a branch within Huntington, Cabell County, West Virginia.

112.    On or about January 31, 2017, at or near Huntington, Cabell County, West Virginia, in the Southern District of West Virginia, and elsewhere, defendant KENNETH EMENI knowingly engaged in a monetary transaction by, through, or to a financial institution, specifically, transferring $10,404 via check from his account held by Chase to Marshall LRC, in criminally derived property that was of a value greater than $10,000 and which was derived from specified unlawful activity, that is, mail fraud, wire fraud and bank fraud, in violation of 18 U.S.C. §§ 1341, 1343 and 1344.

113.    While engaging in the monetary transaction, defendant KENNETH EMENI knew that the property involved in the monetary transaction was criminally derived.

All in violation of Title 18, United States Code, Section 1957.

## Count Thirty-Four
### (Unlawful Monetary Transaction)

114.     Paragraphs 1 – 101 are incorporated by reference herein.

115.     At all relevant times, Chase had a branch within Huntington, Cabell County, West Virginia.

116.     On or about December 10, 2018, at or near Huntington, Cabell County, West Virginia, in the Southern District of West Virginia, and elsewhere, defendant OLUWAGBENGA HARRISON knowingly engaged in a monetary transaction by, through or to a financial institution, specifically, withdrawing $15,000 from his account held by Chase, in criminally derived property that was of a value greater than $10,000 and which was derived from specified unlawful activity, that is, wire fraud and bank fraud, in violation of 18 U.S.C. §§ 1343 and 1344.

117.     While engaging in the monetary transaction, defendant OLUWAGBENGA HARRISON knew that the property involved in the monetary transaction was criminally derived.

All in violation of Title 18, United States Code, Section 1957.

## NOTICE OF FORFEITURE

1.      The allegations contained in this Indictment are hereby re-alleged and incorporated by reference for the purpose of giving notice of forfeiture pursuant to 18 U.S.C. § 981 and 28 U.S.C. § 2461(c).

2.      Notice is hereby given of 18 U.S.C. § 981 and 28 U.S.C. § 2461(c).  Under Section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including, but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by Section 981.

The following property is subject to forfeiture in accordance with Section 981 and/or 2461(c):

a.      All property which constitutes or is derived from proceeds of the violations set forth in this Indictment;

b.      All property involved in such violations or traceable to property involved in such violations; and

c.      If, as set forth in 21 U.S.C. § 853(p), any property described in (a) or (b) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant's to the extent of the value of the property described in (a) and (b).

The following property is subject to forfeiture on one or more grounds stated above:  a forfeiture money judgment in the following amounts per defendant listed below. Each amount constitutes the proceeds of the violations set forth in this Indictment:

a.  A money judgment of $94,126.96 as to defendant KENNETH EMENI
b.  A money judgment of $90,000 as to defendant OLUWABAMISE AWOLESI, also known as OLUWABAMISHE JOHNSON
c.  A money judgment of $249,287.57 as to defendant OLUWAGBENGA HARRISON
d.  A money judgment of $162,142.26 as to defendant JOHN NASSY
e.  A money judgment of $284,070.00 as to defendant KENNETH OGUDU, also known as KENNETH LEE
f.  A money judgment of $69,850.00 as to defendant ROMELLO THORPE

LISA G. JOHNSTON
Acting United States Attorney

By:    _____

KATHLEEN ROBESON
Assistant United States Attorney


_____
R. GREGORY MCVEY
Assistant United States Attorney